KELBRO, INC. *v.* RAWSON C. MYRICK, SECRETARY OF STATE, ET ALS.

November Term, 1942.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 5, 1943.

*Clifton G. Parker,* Deputy Attorney General, for the defendants.

*Sylvester & Ready,* for the plaintiff.

Appearances for Amici Curiae:

*John J. Bennett, Jr.,* Attorney-General of the State of New York, for State Council of Parks and Department of Public Works of the State of New York, and

*Henry Epstein,* Solicitor General, of Counsel.

*William C. Chanler,* Corporation Counsel of the City of New York, Attorney for the Commissioner of Parks of the City of New York and Triborough Bridge Authority, and

*Jeremiah M. Evarts,* Assistant Corporation Counsel, of Counsel.

*Raymond P. McNulty,* Attorney for Long Island State Park Commission.

BUTTLES, J. The plaintiff corporation is engaged in the business of outdoor advertising for direct profit through rentals or compensation received for the erection, maintenance and display of painted bulletins, poster panels and other outdoor advertising devices, commonly called bill-boards, located upon real property at various places in the State of Vermont. In this suit in chancery the plaintiff prays for an injunction restraining the defendants, their agents, employes and representatives from removing certain bill-board structures erected and maintained by the plaintiff, because of alleged violations of certain provisions of the statutes regarding such structures, authority for such removal being claimed by the defendants under P. L. Secs. 8352, 8353 and 8354. The defendants demurred to the complaint and upon hearing the demurrer was overruled *pro forma,* the complaint adjudged sufficient and the defendants were enjoined until further order of the court, in accordance with the prayer of the complaint. The case comes to this Court upon the defendants' exceptions.

By their demurrer the defendants have admitted the following allegations of the plaintiff's complaint. The plaintiff has paid the fee required by P. L. 8340 and has obtained from the Secretary of State the license required in order to engage in such business. It has erected and for a number of years has maintained billboard structures designated as Numbers 304 and 308 on private property of one Seymour in the town of St. Albans on the easterly side of the highway known as Route 7; also a bill-board structure designated as Number 307 on private property of one Wood located on the westerly side of said highway. Each of these structures has been erected and maintained pursuant to written agreements between the plaintiff and the respective land owners. These billboards are not located in a city or incorporated village or in the thickly settled part of a town or in the business part thereof as defined by P. L. Sec. 8338 as amended. They are each 24 feet long by 10 feet high, having an area of 240 square feet each.

On April 18, 1942, the Secretary of State refused to issue a renewal of the permits previously issued to the plaintiff to maintain or display advertising matter on said bill-board structures, such refusal being based upon the ground that such structures were located within 300 feet of a highway intersection and within 240 feet from the center of the travelled part of the highway, in violation of provisions of P. L. Sec. 8350 as amended. It is conceded that all three of the bill-boards are within the forbidden distance from the center of the highway and that Numbers 308 and 304 are less than 300 feet from a highway intersection. It is the plaintiff's contention, however, that the section of the statutes referred to together with other provisions of Chapter 332, hereinafter referred to, by which greater privileges are accorded, under certain circumstances, to an advertiser who is not engaged in the business of outdoor advertising for direct profit than to one who is so engaged, deny to the plaintiff the rights guaranteed to it by the constitutions of the United States and of Vermont in that they deny equal protection of the laws to it, deny due process of law, and fail to provide compensation for the taking of its private property for public use.

The established rule is that every presumption is to be made in favor of the constitutionality of an act of the legislature and it will not be declared unconstitutional without clear and irrefragable proof that it infringes the paramount law. *State* v. *Au-*

*clair,* 110 Vt 147, 156, 4 A2d 107; *Village of Waterbury* v. *Melendy et al.,* 109 Vt 441, 447, 199 A 236; *Nebbia* v. *New York,* 291 US 502, 54 S Ct 505, 516, 78 L Ed 940, 89 ALR 1469.

It is necessary to consider the exact nature of the plaintiff's alleged property rights which it claims have been invaded. It is obvious that something more is claimed than the mere right to erect and maintain bill-board structures upon lands adjacent to the highway. In its essence the right that is claimed is to use the public highway for the purpose of displaying advertising matter. This fact has been well stated by the Philippine Supreme Court which has said that "the success of bill-board advertising depends not so much upon the use of private property as it does upon the use of the channels of travel used by the general public. Suppose that the owner of private property * * * should require the advertiser to paste his posters upon the bill-boards so that they would face the interior of the property instead of the exterior. Bill-board advertising would die a natural death if this were done, and its real dependency not upon the unrestricted use of private property but upon the unrestricted use of the public highways is at once apparent. Ostensibly located on private property, the real and sole value of the billboard is its proximity to the public thoroughfares. Hence, we conceive that the regulation of billboards and their restriction is not so much a regulation of private property as it is a regulation of the use of the streets and other public thoroughfares." *Churchill and Tait* v. *Rafferty,* 32 P. I. 580, 609, Appeal dismissed 248 US 591, 39 S Ct 20. In *General Outdoor Adv. Co.* v. *Dept. of Pub. Works,* 289 Mass 149, 168-169, 193 NE 799, 808, it is said: "The only real value of a sign or bill-board lies in its proximity to the public thoroughfare within public view. * * * The object of outdoor advertising in the nature of things is to proclaim to those who travel on highways and who resort to public reservations that which is on the advertising device, and to constrain such persons to see and comprehend the advertisement. * * * In this respect the plaintiffs are not exercising a natural right, * * * they are seizing for private benefit an opportunity created for a quite different purpose by the expenditure of public money in the construction of public ways. * * * The right asserted is not to own and use land or property, to live, to work, or to trade. While it may comprehend some of these fundamental liberties, its main feature is the superadded claim to use private

land as a vantage ground from which to obtrude upon all the public traveling upon highways, whether indifferent, reluctant, hostile or interested, an unescapable propaganda concerning private business with the ultimate design of promoting patronage of those advertising. Without this superadded claim, the other rights would have no utility in this connection." See also *Perlmutter* v. *Greene,* 259 NY 327, 182 NE 5, 81 ALR 1583; *Fifth Avenue Coach Co.* v. *City of New York,* 194 NY 19, 86 NE 824, 21 ALRNS 744, 16 Ann Cas 695, and an exhaustive article by Ruth I. Wilson entitled "Billboards and the Right to be Seen from the Highway", 30 Georgetown Law Journal, 743 et seq.

The plaintiff avers that its property rights, for which it claims the protection of the national and state constitutions are derived by contract from the abutting land owners, Wood and Seymour. We will consider the rights that these abutters had which they could convey, omitting, for the present, consideration of any preferential treatment that the statute may give to Wood because of his being also the owner and operator of a business located less than 500 feet from two of the bill-boards upon which certain goods are advertised which happen to be offered for sale in connection with that business.

██ ██ The rights of an abutting owner in an adjacent street or highway are of two kinds, public rights which he enjoys in common with all other citizens, and certain private rights which arise from the ownership of property contiguous to the highway which are not common to the public in general, and this irrespective of whether the fee to the highway is in him or in the public. Certain of the latter rights constitute property, or property rights of which an abutter cannot be unlawfully deprived. While the cases involving such rights relate, mainly, to questions of ingress and egress, light and air, and lateral support, neither logic nor sound legal principle exclude the recognition of other rights equally valuable to an abutting owner. *Skinner* v. *Buchanan,* 101 Vt 159, 165, 142 A 72; *Barnett* v. *Johnson,* 15 NJ Eq. 481, 487.

██ These private property rights are usually termed easements. Even if it can be questioned whether they are true easements in the strictest sense they are at least rights in the nature of appurtenant easements, the abutting property being the dominant and the highway the servient tenement, and they are governed by the law of easements. An important right of this nature is the abutter's

right of view to and from the property, from and to the highway; that is, his right to see and to be seen. This right of reasonable view has been generally recognized by the weight of authority and has been protected in numerous cases where encroachments on streets or sidewalks obscured the visibility of signs, window displays or show cases. Among such cases may be cited *First Nat'l Bank* v. *Tyson,* 133 Ala. 459, 32 So 144, 59 LRA 399, 91 Am St Rep 46; *Klaber* v. *Lakenan,* 64 F2d 86, 90 ALR 783; *Perry* v. *Castner,* 124 Iowa 386, 100 NW 84, 66 LRA 160, 2 Ann Cas 363; *Bischof* v. *Mchts. Nat'l Bank,* 75 Neb 838, 106 NW 996, 5 LRANS 486; *Williams* v. *Los Angeles R. Co.,* 150 Cal 592, 89 P 330; *Yale Univ.* v. *New Haven,* 104 Conn 610, 134 A 268, 47 ALR 667; *Davis* v. *Spragg,* 72 W Va 672, 79 SE 652, 48 LRANS 173. See 25 Am Jur Highways, Secs. 155 and 319. While authority contra may be found we are in accord with the rule above stated which we believe to be the sounder and more logical one. It is to be noted that in each of the authorities above cited this right is designated an easement.

It is said in Goddard on Easements p. 383, 8th ed. that "a right of way appurtenant to a dominant tenement can be used only for the purpose of passing to or from that tenement. It cannot be used for any purpose unconnected with the enjoyment of the dominant tenement, neither can it be assigned by the dominant owner to another person and so be made a right in gross, nor can he license anyone to use the way when he is not coming to or from the dominant tenement." *McCullough* v. *Broad Exch. Co.,* 101 App Div 566, aff'd 184 NY 592, 77 NE 1191; *Bang* v. *Forman,* 244 Mich 571, 222 NW 96; *Miller* v. *Weingart,* 317 Ill 179, 183, 147 NE 804, 805-6. While this principle has been applied most frequently to rights of way it is applicable to other appurtenant easements and should, in our opinion, be applied in the present case where the servient tenement is the public highway, built with public funds, designed for public use, and under the exclusive regulation and control of the Legislature. Especially is this so since it is a principle which underlies the use of all easements that the owner of the easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden. 17 Am Jur Easements Sec. 98; *Hopkins the Florist, Inc.* v. *Fleming,* 112 Vt 389, 391, 26 A2d 96; *Dernier* v. *Rut. Ry. L. & P. Co.,* 94 Vt 187, 194, 110 A 4.

■ The result, as to the claim here made, is that the right of view of the owner or occupant of the abutting property is limited to such right as is appurtenant to that property and includes the right to display only goods or advertising matter pertaining to business conducted thereon. His appurtenant easement does not include the right to display advertising matter foreign to a business conducted on the property, and he could not convey to this plaintiff a right that he did not himself possess.

The greater privileges accorded to advertisers who are not engaged in the advertising business for direct profit, to which we have referred, are to be found in Sections 8340, 8341, 8342, 8343 as amended, 8349 as amended and 8350 as amended of P. L. Chap. 332. They include preferential treatment as to payment of license fees and obtaining permits; as to the required distance from the abutting highway and from intersecting highways, of bill-boards upon which are displayed advertisements of goods manufactured or offered for sale or of a business carried on within 500 feet thereof; also as to advertisements by or on behalf of a municipality, by common carriers upon certain kinds of property and as to highway lighthouses and purely direction signs.

■ That the Legislature has seen fit to extend these privileges cannot avail this plaintiff. They are a matter of sufferance rather than of right. The plaintiff is admittedly not in the excepted class but is, rather, seeking to use the highway for commercial purposes analogous to the use made of it by common carriers. Such use, this Court has held, the Legislature in the exercise of its police powers may wholly deny, or may permit to some and deny to others as will best promote the general good of the public. There is no inherent right to use the highways for commercial purposes. *State* v. *Gamelin,* 111 Vt 245, 250-251, 13 A2d 204; *In re James,* 99 Vt 265, 270, 132 A 40, 44; *State* v. *Caplan,* 100 Vt 140, 155, 135 A 705. This is in accord with the holdings of the United States Supreme Court which has recently said: "Whether, and to what extent, one may promote or pursue a gainful occupation in the streets, to what extent such activity shall be adjudged a derogation of the public right of user, are matters for legislative judgment. The question is not whether the legislative body may interfere with the harmless pursuit of a lawful business, but whether it must permit such pursuit by what it deems an undesirable invasion of, or interference with, the full and free use of the highways

by the people in fulfillment of the public use to which streets are dedicated." *Valentine* v. *Chrestensen,* 316 US 52, 54-55, 62 S Ct 920, 921, 86 L Ed 1262.

No invasion of the plaintiff's constitutional rights appears. *Decree reversed. Defendant's demurrer sustained; injunction dissolved and plaintiff's bill of complaint dismissed.*

## ON MOTION FOR REARGUMENT.

BUTTLES, J. After the foregoing opinion was handed down the plaintiff, upon leave duly obtained, moved for a reargument, basing its motion upon several grounds.

The plaintiff is in error in saying that the opinion proceeds on the theory that an easement was created between the *plaintiff* and the *abutting land owners.* We merely assumed the correctness of the averment in the complaint that the billboard structures in question were erected and maintained pursuant to written agreements between the plaintiff and the respective land owners. We made no finding or assumption, and did not consider it necessary to do so, as to the relationship created by such agreements between the parties. It appears, however, that the plaintiff did not become the agent or servant of the abutters. No doubt the plaintiff is correct in saying that an easement between them was not created.

The plaintiff urges that by the concluding clause in our quotation from the opinion in *Churchill and Tait* v. *Rafferty,* 32 P. I. 580, 609, we conceded that private rights are here secondarily involved. We do not think that inference is warranted but if it were it needs no argument to demonstrate that claimed private rights must yield so far as they are inconsistent with paramount public rights. We consider that in the present case there is such inconsistency. It should be noted that we did not follow *in toto* the reasoning either of the Churchill case or of *General Outdoor Adv. Co.* v. *Dept. of Public Works,* 289 Mass 149, 193 NE 799. We merely adopted the trenchant and accurate language used in those opinions to describe the nature of the claims which this plaintiff is making. Upon reading the Massachusetts constitutional amendment to which the plaintiff refers it becomes obvious that it had nothing to do with the use of the language quoted from the latter case.

Our holding that the right which the plaintiff here claims is in the nature of an easement appurtenant to the abutting land and

servient upon the public's interest is challenged upon several grounds. It is said that this holding is inconsistent with the fact that the fee to highways in this State is in the abutting owners, subject to the use by the public for highway purposes. While it is true that this is the general rule it is not the universal rule in Vermont or elsewhere. In *Skinner* v. *Buchanan,* 101 Vt 159, 142 A 72, the premises involved abutted upon the street but did not include the fee to any part of that street, and in *Ferre* v. *Doty,* 2 Vt 378, it appeared that the plaintiff, who had the fee to abutting land, had no fee to any part of the adjoining common, which was held to be in some respects similar to a highway. The record before us does not disclose whether in the present case the fee to the highway is in the public or in one or the other or both of the abutting owners.

Furthermore it is stated in *Skinner* v. *Buchanan, supra,* as set forth in the foregoing opinion, that the abutting owner has certain special rights in the highway irrespective of whether the fee to the highway is in him or in the public. The right of view is of the same nature as those referred to in that statement and has often been included with them. There is abundant authority for the statement in the Skinner case. See 29 CJ 547; *Donahue* v. *Keystone Gas Co.,* 181 NY 313, 320-321, 73 NE 1108, 70 LRA 761, 106 Am St Rep 549; *Anzalone* v. *Metrop. Dist. Comm.* 257 Mass 32, 36, 153 NE 325, 47 ALR 897; *Denver* v. *Bayer,* 7 Col 113, 2 P 6; *Norwalk* v. *Podmore,* 86 Conn 658, 86 A 582; *Braken* v. *Minneapolis & St. L. Ry. Co.* 29 Minn 41, 42, 11 NW 124; 4 McQuillin, Munic. Corp. 2d ed. Sec. 1426; 3 Dillon, Munic. Corp. 5th ed. sec. 1136, where it is said: "The later and best considered judgments hold that it is comparatively unimportant, as respects the relative rights of an abutting owner and the public in and over streets, whether the bare fee is in the one or the other. If the fee is in the public, the lawful rights of the adjoining owners are in their nature equitable easements; if the fee is in the abutter, his rights in and over the street are in their nature legal; but in the absence of controlling legislative provisions, the extent of such right is, in either event, substantially, perhaps precisely, the same."

The rules stated in the opinion by which dominant easements are restricted apply here if the rights of the abutter are such easements. If they are not true easements because of the fee of the highway being in the owner of the rights, those restrictions are equally

applicable, since "the extent of such rights is, in either event, substantially, perhaps precisely, the same." The plaintiff invokes the rule, often stated in the books, that an owner cannot have an easement in his own land. If the fee of the highway is in the public the abutter's easement would not be in his own land, but if the fee is in him the extent of his rights, as above stated, is the same. In that event the situation is somewhat analogous to that which sometimes results in the creation of an implied easement. Strictly speaking, a man cannot subject one part of his property to another part by an easement, on the theory that he cannot have an easement in his own land, but if he makes one part of it servient to another by an alteration which is obvious and permanent or apparent and continuous, and then conveys one of the parcels, his grantee takes such part benefited or burdened by the easement which the alteration created. *Prov. Mut. Life Ins. Co.* v. *Doughty,* 126 NJ Eq. 262, 265, 8 A2d 722, 724; 17 Am Jur Easements Sec. 32.

The plaintiff seems to have misunderstood the opinion in one respect. We discussed only the abutter's right of view to and from the highway and did not intend to assert any corresponding right of view on the part of the public. One sentence of the opinion has been amended to prevent any such misapprehension. The plaintiff's statement that an easement must be created for the benefit of corporeal property is, therefore, not at variance with the opinion.

The right of view was, as the plaintiff asserts, in existence before the billboard structures were erected. The manner in which the plaintiff has sought to increase the servitude of that right fully appears, we think, from the opinion.

We make no assumption as to the purpose for which the land may have been rented to the plaintiff. The demurrer admits the averment of the complaint that the use to which the land has been put by the plaintiff is pursuant to written agreements with the land owners, and it does not appear that that use by the plaintiffs is connected with the enjoyment or use of the land by its owners. It is alleged that Wood owns the land upon which billboard number 307 is erected, but the fact that he sells gas and oil at retail at a building more than 500 feet distant and across a road from that billboard, upon which gas and oil are advertised, does not establish such connection. It does not appear that the brands of gas and oil advertised are the same brands sold by Wood, nor that if they

are the same brands attention is called by the advertisement to his station as a place where they may be bought. Apparently the billboard advertises Wood's business no more than it does thousands of others—even less if the brands of gas and oil are different.

The record does not indicate that the plaintiff in displaying this advertisement was acting as the agent or servant of Wood, but rather that it acted independently in furtherance of its own business which Wood had by contract attempted to give the plaintiff the right to conduct at that location. It is not necessary to assume aesthetic consideration for the enactment of restrictions which apply to this billboard. In the view we take the Legislature's undoubted right to restrict or forbid the use of highways for commercial purposes sufficiently justifies such enactment. The classification, for legislative purposes, of a person, firm or corporation engaged in the business of outdoor advertising for direct profit through rentals or compensation in a class apart from one engaged in advertising, not for such direct profit but for the purpose of fostering a local business, a community enterprise or public safety, is clearly not unconstitutional, the object sought by the Legislature being, it may be assumed, the limitation of the use of highways for commercial purposes. *State* v. *Auclair,* 110 Vt 147, 160, 4 A2d 107; *State* v. *Haskell,* 84 Vt 429, 437, 79 A 852, 34 LRANS 286; *State* v. *Hazelton,* 78 Vt 467, 471, 63 A 305. Mr. Wood is therefore properly placed in a different class from this plaintiff, even if it be true that because he sells coca-cola and Chesterfield cigarettes at his store he could lawfully advertise those products—which the plaintiff advertises—upon billboards "identical in size and location" with two of those maintained by this plaintiff.

The fundamental trouble with the plaintiff's position is that it claims certain property rights in the highway which we hold do not exist to the extent claimed.

*The plaintiff's motion for reargument is denied. Let full entry go down.*