Cheshire
No. 85-487

MARGARET ORCUTT

v.

TOWN OF RICHMOND

October 2, 1986

*Lane & Lane*, of Keene (*Howard B. Lane, Jr.*, on the brief and orally), for the plaintiff.

*Goodnow, Arwe, Ayer, Prigge & Wrigley P.C.*, of Keene (*John D. Wrigley* on the brief and orally), for the defendant.

BROCK, J. This interlocutory appeal from the ruling of the Superior Court (*Pappagianis*, J.) (*see* SUP. CT. R. 8) dismissing the plaintiff's action insofar as she sought damages presents only one issue: "Will the New Hampshire Supreme Court review its decision in *Wolfe* [*v.*] *Windham*, 114 N.H. 695 [, 327 A.2d 721 (1974)] in view of the facts set forth herein and determine whether Margaret

MacLeod Orcutt should have an opportunity to recover damages because of the discontinuance of Greenswood [*sic*] Road?" We reverse and remand.

Margaret Orcutt owns between six hundred and seven hundred acres of land in Richmond. The land has approximately 15,520 feet of frontage on Green Woods Road and the discontinued portion of that road, known as Tully Brook Road. Ms. Orcutt took title to the property by three separate conveyances. By the first conveyance in 1955, Philip Dana Orcutt and later Philip Dana Orcutt and Margaret MacLeod Orcutt received approximately sixty-three acres with 1,440 feet of frontage on Green Woods Road and 820 feet on Tully Brook Road. The land conveyed by the second, in 1962, was a six-hundred-acre tract contiguous to the first parcel, with 3,300 feet of frontage on Green Woods Road and 8,360 feet on Tully Brook Road. The latter frontage figure is smaller than that mentioned in the interlocutory appeal statement because our examination of the parties' only submitted exhibit reveals that certain frontage was apparently counted twice in arriving at the total frontage set forth therein. The third and final transfer, consummated in 1966, consisted of nine acres with 1,600 feet of frontage on Tully Brook Road. This tract is contiguous to the second parcel.

At the 1981 annual town meeting, the town voted to discontinue Tully Brook Road. This resulted in a reduction of Ms. Orcutt's frontage on a Class V road, *see* current codification at RSA 229:5 (1982 and Supp. 1985), from 15,520 feet to 4,740 feet, the remainder constituting frontage on a Class VI road. A Class V road is one not within Classes I–IV as defined by the statute and which must be maintained by the town. However, the Class VI category "include[s] all highways discontinued as open highways and made subject to gates and bars, and all highways which have not been maintained and repaired by the town in suitable condition for travel thereon for 5 successive years or more." *Id.* The only one of Ms. Orcutt's three tracts which no longer has any frontage at all on a Class V road is the third, nine-acre parcel.

Gilbert Cyr, a landowner also with frontage on Tully Brook Road, appealed the discontinuance under RSA 238:4 (now RSA 231:48), and Margaret Orcutt became a party to that appeal pursuant to the statute. Mr. Cyr, apparently resolving his dispute with the town, took a voluntary non-suit. Ms. Orcutt, however, remained a party with respect to her land. The town moved to dismiss her action insofar as she sought damages for frontage taken, alleging that *Wolfe v. Windham*, 114 N.H. 695, 327 A.2d 721 (1974) precluded recovery of such damages. The motion was granted apparently on that basis and this appeal followed.

In *Wolfe*, a majority of this court held that a landowner whose property has frontage on a public road cannot recover damages for the road's discontinuance if there remains a means by which the landowner retains access to his or her property. As the court stated therein: "[T]he right of access remains unimpaired if an alternative means of access exists. The right consists only of access to the system of public highways not of a particular means of access." *Wolfe v. Windham, supra* at 698, 327 A.2d at 723. Justice Grimes dissented from the majority's position in that case, stating: "In the court's charge [to the jury], . . . [t]here was no mention made as to the reasonableness of the alternative means of access." *Id.*, 327 A.2d at 723–24. He regarded this omission as error, and would have ordered a new trial. *Id.* at 699, 327 A.2d at 724.

The court in *Wolfe* did not deal explicitly with the issue of reasonableness as such, and the decision in that case does not, therefore, dictate the result to be reached here. However, in *State v. Shanahan*, 118 N.H. 525, 389 A.2d 937 (1978), the court recognized the validity of Justice Grimes's concern as to reasonableness, holding that

> "[a] finding that alternative means of access are available to a landowner would militate against the conclusion that a restriction of a particular point of his access is a taking. However, the alternative means of access must be reasonable. . . . Also, what might be considered a merely inconvenient or circuitous alternative means of access for one landowner might be an unreasonable alternative for another."

*State v. Shanahan, supra* at 527, 389 A.2d at 939 (citing *Wolfe v. Windham, supra* at 698, 327 A.2d at 723 (Grimes, J., dissenting)). Thus, *Shanahan* modified *Wolfe* to require that the alternative access remaining after an exercise of governmental regulatory power must be reasonable when judged with reference to the existing use of the land.

We therefore hold that Ms. Orcutt should have an opportunity to seek to recover damages for the discontinuance of Tully Brook Road. If she can persuade the court or jury that the access to her property is not reasonable, she should be permitted to recover damages.

*Reversed and remanded.*

KING, C.J., did not sit; the others concurred.